## Chapin *v.* School District No. 2 in Walpole.

Where a school house, built by the plaintiff, was used to keep all the schools of the district, without objection from any one, and the district, at its annual meeting, after the house was built, voted to sell the old house to help pay for the new one, and also voted to raise money to pay for the house and land—*held*, that the evidence was competent to show a ratification of what had been done by the plaintiff, and an acceptance of the house by the district, notwithstanding an informality in the warning of the meeting.

A notice of seven days is all that is required to be given of any annual school district meeting.

The seasonable posting of an attested copy of a warrant for an annual school district meeting, on the door of a school house used for keeping the schools of the district, there being no other school house in the district, is sufficient.

In an action by an individual against a school district, an auditor may, in his discretion, admit the plaintiff to testify on the hearing.

Assumpsit, for labor done, materials furnished, and money expended, in the erection of a school house by the plaintiff, in district No. 2 in Walpole.

The case was committed to an auditor, who reported, in substance, as follows:

I met the parties with their counsel, by agreement, at the school house in district No. 2 in Walpole, on Thursday, the seventh day of September instant, at nine of the clock in forenoon, for the purpose of executing the duties imposed upon me by the commission hereunto annexed, in the action Levi Chapin against school district No. 2 in Walpole. The plea was the general issue. The plaintiff was offered as a witness, and objected to by the defendants' counsel, on the ground that the defendants being a corporation, could not testify. But he was admitted to testify as a witness in chief.

The plaintiff acted as one of a committee of five, and furnished the materials, money and labor mentioned in his account below, in purchasing land and erecting a school house thereon, in 1850, for and in behalf of said district. No record of the election of a committee by the district was offered by either party. Two of the committee declined to take any active part in building said house, but told the plaintiff that he and another member must go on and build the house. One member of the committee moved out of the district before any thing was done towards building the house. The plaintiff and one other member of the committee made contracts, paid out money and performed labor, as they found it necessary, in the progress of constructing said school house. On the 22d of October, 1850, the plaintiff paid, or became liable to pay, $50 for land to set said school house upon, and took a deed of that date, running to said school district No. 2. But no evidence was offered of any vote of the district accepting said deed, or any vote to buy the land, and no vote locating said house. The plaintiff offered the records of the annual meeting of the district, in March, 1851. From an examination of the records, the warrant for this meeting appeared to have been dated March 6th, 1851, and signed by H. Albee and Jonathan Chapin, as prudential committee. The record of the return upon said warrant was as follows: " Cheshire, ss.—

March 21, 1851. This is to certify that I posted up a true copy of the within warrant, attested by me, on the door of the school house in said district; also one copy of the same on the east end of Nathaniel Tucker's toll bridge, on Friday, the 7th day of March, A. D. 1851. H. Albee." This return was duly sworn to. The defendants' counsel objected that the copies of the warrant posted up were only attested by one of the prudential committee; that it did not appear by the return that the end of the bridge was one of the most public places in the district, and that less than fifteen days notice of the meeting had been given. There was a tavern kept in said district at this time. The third article in the warrant was to see if the district would vote to apply the proceeds of the old house to help pay for the new one. And the district voted at said meeting so to apply the proceeds of their old house.

At this meeting, also, in pursuance of an article in the warrant, money was raised by vote to pay for the house and land.

The defendants' counsel then proposed to offer evidence that the record of the meeting and the votes above mentioned were not according to the fact. To this evidence the plaintiff objected, and it was decided to be inadmissible. It appeared that the district had had no other school house than the new one above mentioned since the winter of 1850 and 1851, and had used this one since that time, when they had had schools, without any other vote of acceptance on the part of said district than the votes above mentioned.

Upon these facts, the auditor being of opinion that the defendants had accepted the house, and were liable therefor, made a report in favor of the plaintiff; and the questions arising upon the report were transferred to this court for determination.

*Vose*, for the defendants.

1. The plaintiff was improperly admitted to testify in

chief before the auditor. *Lovering* v. *Lovering*, 13 N. H. Rep. 521.

2. The facts stated do not, even *prima facie*, show the plaintiff to have been an officer of the district *de facto*. No color of an election or appointment is shown. *Jones* v. *Gibson*, 1 N. H. Rep. 268; *Tucker* v. *Aiken*, 7 N. H. Rep. 113.

3. The plaintiff in this case must show himself an officer *de jure*, to make the defendants chargeable, in consequence of his official acts. *Cavis* v. *Robertson*, 9 N. H. Rep. 524.

4. The two alleged committee men could not delegate their authority to others. The two who acted were but a minority of the alleged committee, and as such could not by their acts bind the district.

5. The district has never located the land as a school house lot, nor authorized any one to purchase it, nor ever had any title to it. The location of a school house being a matter in relation to which persons aggrieved may appeal to the selectmen, should, as we think is required by sec. 1. page 172 Comp. Stat., be made by a positive vote of the district, and not left to vague or doubtful inference from collateral matters. Until a proper location had been made, no committee could charge the tax payers of the district with the expense of building a house or purchasing the land for one.

6. For the causes stated in the case, the doings of the annual meeting, in March, 1851, under the third article in the warrant, as well as in raising money, were unwarranted and void. The proviso requiring fifteen days notice, applies as well to the first as to the second section of chap. 74 Comp. Stat, page 169, where the objects of the meeting are the same. And this notice is required for the appropriation of money as well as for raising it. The appropriation of money is a part of the means of building the house.

7. Occupancy of a house or land may furnish evidence of a liability for rent, but of itself has no tendency to show

that the occupant is liable to pay the price of building the house, or of purchasing the lot.

*Cushing*, for the plaintiff.

The questions that arise upon this report, are raised upon the annual meeting in March, and the effect of occupying the house as a school house ; and we say :

1. The meeting was regular.   Fifteen days notice is not required, except at the annual town meeting in March, or for raising money.   Comp. Stat., ch. 74, §§ 1, 2.   The difficulty about the time of warning is cured by the statute.   The notice was sufficient, as the meeting was not a special one, for the raising of money or the building of the school house, under the first and second sections.   The attestation by one of the prudential committee was a substantial compliance with the law.   If the committee all unite in calling the meeting, that is enough.   The committee does not ordinarily consist of but one.   Posting the warrant up at the school house was enough.   The report shows that it was sufficiently posted.

2. The only substantial question that arises in the case is, are the facts reported by the auditor competent for him to consider, in arriving at the conclusion that the district had accepted the school house ?   And we say this is plain.   It is a noticeable fact that the district have kept all their schools in this house.   This of itself amounted to an acceptance. *Abbott* v. *School District in Herman,* 7 Greenleaf's Rep. 118 ; Angell & Ames on Corp., chap. 8, § 8.   The case from Greenleaf is precisely in point, and Angell & Ames sustains us in full.   The doctrine is, that wherever any thing is done at the request of the defendant, a promise arises, and whenever the defendant takes the benefit of an act, that is equivalent to a request; and corporations are governed by the same rule.   Take the case of the dedication of highways. That is analogous.   The town becomes holden from its use, and a man loses his rights to it in the same way.   So the

district are liable for the school house, by having used it. They have fairly become liable by their acceptance.

EASTMAN, J.   This action was brought by the plaintiff, in his individual capacity, for work and labor done and performed by him for the defendants, for materials furnished, and for money paid for them.   Although he was one of a committee to erect the school house, yet it was in no official capacity that he claimed to recover, but for an indebtedness accruing to him as an individual.   Under the circumstances of the case, his official character was not material to his right of recovery, and the action was properly brought.   *Harris* v. *School District in Canaan*, 8 Foster's Rep. 58.

There appears to have been no controversy as to the fact that the plaintiff performed the labor, rendered the services, furnished the materials, and paid the money, as claimed by him.   But the question is, whether, upon the facts stated in the report, the auditor was justified in finding the defendants liable.   By the first section of chapter seventy-five of the Compiled Statutes, school districts are authorized to build, purchase, repair, alter or remove their school houses, &c., to purchase land therefor, and raise money for these purposes.   It is within the scope of their powers, as given by the statute, to do these and various other acts.   The defendants, then, had the power to build the house in question, or to buy it, or to hire the plaintiff to erect it; and they could purchase the land.

This house was built in 1850.   At the annual meeting of the district, in March, 1851, the defendants voted to apply the proceeds of the old house to help pay for the new one, and also voted to raise money to pay for the house and land.

It is objected, that this meeting was not legal, first, because fifteen days notice was not given of the meeting; second, because the copies posted were not duly attested;

and third, that it did not appear that one of the places at which a copy was posted was the most public in the district.

The case finds that the meeting was the annual one in March. That being so, the notice was sufficient. Seven days notice is all that the statute requires for meetings of that description. Comp. Stat., ch. 74, § 1; *Harris* v. *School District in Canaan,* 8 Foster's Rep. 58. The meetings which require fifteen days notice are special ones, to raise money, &c., not the annual ones. Comp. Stat., ch. 74, § 2; also *Harris* v. *School District.*

We think, also, that the posting of the notice was sufficient. One copy of the warrant was posted on the door of the school house, and that answers the requirement of the statute. This house had not been formally accepted by the district, but it had been used to keep that winter's school in, and was *de facto* a school house in the district. Notices of annual school district meetings are to be given by posting up a copy of the warrant " on the door of the school house, if there be any in the district, otherwise at one or more public places in the district." Comp. Stat., ch. 74, § 1. But even if the posting on the door of the school house was insufficient, the return could be amended, showing that the notice was posted at a public place. *Harris* v. *School District,* before cited.

But the copy of the warrant appears not to have been attested according to the strict letter of the statute, the provision being that it shall be attested by the committee. In this district, the committee consisted of two persons, and although the warrant was duly signed by both of them, yet the copies posted were attested by one only. Now how far this exception might operate upon the legality of any tax assessed by virtue of any vote passed at such a meeting, need not be determined; and whether we should consider the defect as fatal, did the plaintiff's right depend upon it, we find it unnecessary to decide; for we regard the repeated use of the house, without objection or protest from the dis-

trict, and the apparent appropriation of it to their own benefit, with the plaintiff's assent, coupled with the action of the district in voting to apply the proceeds of the old house to help pay for the new one, and in voting to raise money to pay for the house and land, as evidence entirely competent to authorize the auditor or a jury to find an acceptance of the house.

In *Abbott* v. *School District in Hermon*, 7 Greenl. 118, services were rendered by the plaintiff similar to those in the present case, and the court held that the keeping of the school in the school house, was an acceptance of the house on the part of the district, binding them to pay a reasonable value for the building; and the general principle was laid down that if one accepts or knowingly avails himself of the benefit of services done for him without his authority or request, he shall be held to pay a reasonable compensation for them. *Mellen*, C. J., who delivered the opinion of the court in that case, says: " The acts in appropriating the school house to its intended uses, and for the benefit of the district, we must consider as an acceptance of the house, and a sanction of those acts which the plaintiff had done towards completing it, equivalent, in its legal effect, to a previous request on the part of the school district."

In *Fisher & a.* v. *School District No.* 17 *in Attleborough*, 4 Cush. 494, the house was built by the plaintiffs in 1846, and the case was decided in the supreme court in 1849, having been tried before a jury in the common pleas. It appeared that after the house was built, all the schools of the district were kept in it, and all the meetings of the inhabitants of the district were held therein, and that notices of the meetings were posted upon it; and it was held that on these facts a jury were warranted in finding such a ratification and acceptance by the district as would render them liable to pay the plaintiffs for the house.

These authorities are in point; and the first one goes further than is necessary for us to go in deciding the case at

bar.   If a school is kept in a house merely by the direction of the prudential committee, without anything being done by the district, it would seem not to be competent evidence of an acceptance.   *Hayward & a.* v. *School District in N. Bridgewater*, 2 Cush. 425.   The facts in this case, however, are such as to remove it from all doubt.   Not only were schools repeatedly kept in the house, but the district voted to raise money to pay for it.   There were positive acts on their part, as in the case of *Fisher & a.* v. *School District in Attleborough;* acts showing a ratification and acceptance of what the plaintiff had done.

We might observe, further, that the district having met in pursuance of the notice, and passed the vote to raise money. to pay for the house, it might be a question how far they could go, as between them and a third person, in repudiating that vote on the ground of informality in certifying the copy calling the meeting.

The exception taken to the admission of the plaintiff as a witness on the hearing before the auditor cannot prevail. The testimony of a party is admissible, in the discretion of the auditor, and a report will not be set aside either for the admission or rejection of the party, unless the court shall see that wrong has been done.   *Mann* v. *Locke,* 11 N. H. Rep. 248; *Smith & Lougee* v. *Smith & Bannister*, 7 Foster's Rep. 244; *King* v. *Hutchins*, 8 Foster's Rep. 561.

It is true that it was said in *Lovering* v. *Lovering*, 13 N. H. Rep. 521, cited by the defendants' counsel, that if it should appear that injustice had probably been done by admitting one of the parties to testify, the court might set aside the report or recommit it, as the case might require; and such is undoubtedly the true qualification to be given to the universality of the rule.   *Fuller* v. *Little*, 7 N. H. Rep. 539.   It must appear that injustice has been done, otherwise the report will not be disturbed either for the admission or rejection of the party as a witness.   And here no such injustice appears.   The defendants were a corpora-

tion, but that did not prevent the members of it from testifying. Every voter in the district would probably have been admitted as a witness had they been offered.

The proposition of the defendants' counsel to introduce evidence showing that the record of the meeting of the district in March, 1851, and the votes then passed, was not according to the fact, was rightly ruled upon by the auditor. The point appears to be abandoned in the argument, and from the conviction, no doubt, that the position is untenable.

We are entirely satified that the conclusion to which the auditor arrived in finding the defendants liable was correct, and we are accordingly of opinion that there should be,

*Judgment on the report.*